EUGENE MATTHEWS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Matthews v. Commissioner
Docket No. 33002-83.
United States Tax Court
T.C. Memo 1986-52; 1986 Tax Ct. Memo LEXIS 556; 51 T.C.M. (CCH) 416; T.C.M. (RIA) 86052; February 5, 1986. William A. Patterson, for the petitioner. Frank Simmons, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in income tax and additions to tax against petitioner for the years and in the amounts as follows: ADDITIONS TO TAX
CALENDAR YEAR
DEFICIENCY
SECTION 6653(b) [1]
1973
$3,728.73
$1,864.37
1974
23,685.44
11,842.72
*557 After concessions by both sides, the remaining issues to be decided are: 1. Whether petitioner's returns for the years in issue were fraudulent within the meaning of section 6653(b), which will control, and 2. Whether the assessment of deficiencies against petitioner for either year is barred by the applicable statute of limitations. Many of the facts herein were established by order of the Court under Rule 91(f), pursuant to proposed stipulations of fact submitted by respondent, to which petitioner did not object, and such stipulations, with accompanying exhibits, are incorporated herein by this reference. FINDINGS OF FACT Petitioner was a resident of Tylertown, Mississippi, at the time of filing his petition herein. Petitioner timely filed joint income tax returns with his wife, Mattie Matthews, for the calendar years 1973 ahd 1974. [2] An amended return for the year 1974 was filed on or about September 2, 1981, claiming a refund of $177.53, based upon the carryback of an unused new jobs credit. [3]
*558 Petitioner completed high school and a two-year mechanics course at the Vocational Technical Division of Alcorn College in Mississippi. Beginning at the time of his discharge from the military in 1971, and continuing through 1973 and 1974, petitioner operated a logging business as a sole proprietor. His business during 1973 and 1974 consisted primarily of cutting timber which had been purchased by various firms from the landowners. Petitioner also cut and sold some timber which he purchased from the landowners. During this period, he had six or seven employees. He maintained only one checking account for both his business and personal use, but he also maintained three savings accounts with banks. In the years in issue, petitioner was solely responsible for operation of the business and maintenance of business records. Such business records consisted solely of bank statements, canceled checks, deposit slips, invoices, logging tickets and vouchers for logging tickets. No formal set of books or records was maintained. Petitioner paid some of his business expenses by check and some by cash. He paid his employees in cash. Upon receipt of a check for timber hauled or sold, petitioner *559 cashed the check and kept in his pocket the cash he expected to need for expenses for the following week. He deposited the remainder of the proceeds of the check to the checking account or one of the savings accounts. Petitioner and his wife had their joint income tax returns for 1973 and 1974 prepared by a local certified public accountant, who did not audit of petitioner's books or records, but simply prepared the returns from information furnished by petitioner. Such information consisted of a list of income and expenses prepared by petitioner and furnished to the CPA by him.The gross income figures were prepared from stubs of the income checks which petitioner received from persons or firms to whom he sold timber or for whom he hauled timber. The list of expenses was prepared from sales tickets and canceled checks. During the years 1973 and 1974, petitioner had interest income from one or more of the banks in which he maintained savings accounts, in the total amount of $1,332.73 in 1973 and $2,480.96 in 1974. Such interest income information was not furnished to the CPA and was not reported in petitioner's returns. The banks involved furnished petitioner with periodic statements *560 of his savings accounts and, at the end of the year, furnished a statement of total interest earned on the account during the year, calling attention to the fact that such interest was a Federal income tax item. Petitioner's returns for 1973 and 1974 were audited by a regular revenue agent as well as a special intelligence agent. In the course of their investigation, the agents sought to determine the firms with whom petitioner had done business and from whom petitioner derived gross income. Petitioner represented to the agents that he had done business with and derived income from only three firms in each of the years in question. Upon canvassing the local area, however, the agents discovered that in fact petitioner had done business with six different firms in 1973 and seven such firms in 1974, who made payments of gross income directly to petitioner. Although petitioner reported gross income from his logging business for 1973 and 1974 in the respective amounts of $120,768.15 and $146,429.73, the actual amounts of gross income from logging in those two years were $147,886.30 and $196,964.23, respectively. Determining that petitioner's books and records were inadequate as a *561 basis for computing his taxable income, respondent recomputed petitioner's income for the years in question on the net worth plus unallowable expenditures basis. As a result, respondent determined that petitioner had unreported net taxable income for 1973 in the amount of $12,316.91, and $65,671.30 for 1974, and determined the instant deficiencies accordingly, together with additions to tax under section 6653(b) for fraud. Part of the underpayment of tax in each of the years 1973 and 1974 was due to fraud. OPINION Petitioner has conceded the correctness of respondent's determination of deficiencies for 1973 and 1974, as well as the correctness of respondent's use of the net worth method. It remains only for us to determine whether any part of the resulting underpayment of tax for each year was due to fraud within the meaning of section 6653(b). The burden of proving fraud is on respondent, and he must do so by clear and convincing evidence. Section 7454(a); Rule 142(b); . This burden may be met by showing that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes, and that there *562 is an underpayment of tax. , cert. denied ; ; . When fraud is determined, as in the instant case, for more than one taxable year, respondent must show that some part of an underpayment was due to fraud for each taxable year for the corresponding addition to tax to be upheld. ; ; .The existence of fraud is a question of fact to be resolved upon a consideration of the entire record. ; , affd. without published opinion . Fraud will never be presumed. . Fraud may, however, be proved by circumstantial evidence because *563 direct proof of the taxpayer's intent is rarely available. , affd. ; . The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; ; . Although petitioner's failure to keep adequate books and records from which his income could be determined is certainly a suspicious circumstances, this fact standing alone in the instant case would be insufficient to carry respondent's necessary burden of proof to establish fraud.In this case, however, there is more. Petitioner, a reasonably well-educated man, knew all about bank savings accounts and used them extensively to earn interest on his funds. The banks notified him of his annual interest earnings, and he was on notice that these were taxable income items. Nevertheless, it appears that he did not notify his return preparer of his interest earnings in either of the *564 years in question. Although the amounts of unreported income from interest were not large, they were too large to have escaped petitioner's attention, and we find no innocent explanation for their omission. More important, and what we consider to be conclusive in this case, is the fact that petitioner misrepresented the sources of his logging income when asked about these sources by the revenue agents. He claimed to have done business with only three firms in each of the years in question, but the evidence is clear, based upon canceled checks which are in this record, that petitioner did business with six different firms in 1973 and seven firms in 1974, all of whom made payments directly to petitioner, as shown by canceled checks and invoices. Petitioner attempted to explain this discrepancy by saving that he was paid by the undisclosed firms through one of the firms with whom he did business and which he had disclosed to the agents, but the documentary evidence in this record clearly shows that this is not true. Misrepresenting facts, failing to inform or otherwise misleading a taxpayer's return preparer or a revenue agent can be persuasive evidence of fraud. Cf. ; *565 . We accordingly have found that petitioner's concealment of the sources of his income from the examining agents was deliberate, that the omission of income was substantial, and we hold that respondent has sustained his necessary burden of proof with respect to fraud for each year. Once fraud is proved as to any part of the underpayment, the addition to tax attaches to the entire deficiency. See , affd. . The resolution of this issue likewise resolves the remaining issue of the statute of limitations in favor of respondent. Respondent's notice of deficiency was issued more than three years after the filing of petitioner's returns, and normally would be barred by the three-year statute of limitations under section 6501(a), and petitioner affirmatively pleaded the bar of the statute of limitations in this case. Rule 39. Under the provisions of section 6501(c)(1), however, respondent may determine the deficiency and assess the tax at any time in the case of a false or a fraudulent return. We accordingly decide *566 this issue in favor of respondent. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Although joint returns were filed for both years, the record does not disclose that any statutory notice of deficiency was issued to anyone but petitioner, and only he has filed a petition herein. ↩
3. Respondent has conceded the correctness of this adjustment.↩